# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| OPAL E. BROWNING, | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) Case No. CIV-10-1038-M ) |
| MICHAEL J. ASTRUE, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) ) |
| Defendant. | ) |

## **REPORT AND RECOMMENDATION**

Plaintiff, Ms. Opal E. Browning, seeks judicial review of the denial of disabled widow's insurance benefits[1] by the Social Security Administration. This matter has been referred for proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B) and (C). It is recommended that the Commissioner's decision be affirmed.

## I.   **Procedural Background**

Ms. Browning's husband died in May 2002. Ms. Browning filed her application for disabled widow's benefits on December 4, 2006, two months before her 50th birthday, alleging a disability onset date of June 1, 2002, the month after the date of her husband's

---

[1]An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404. 1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven disability. 20 C.F.R. §§ 404.1520, 416.920. Additional requirements must be met by a claimant seeking disabled widow's benefits. *See* 20 C.F.R. § 404.335.

death. The Social Security Administration denied her application initially and on reconsideration. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. *See* Administrative Record [Doc. #12] (AR) at 6-23. The Appeals Council denied Ms. Browning's request for review. AR 1-4. This appeal followed.

## II.  The ALJ's Decision

The ALJ followed the sequential evaluation process required by agency regulations. *See Fisher-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520.[2] The ALJ first determined that there was no clear evidence that Ms. Browning had engaged in substantial gainful activity since the alleged onset date. AR 11. At step two, the ALJ determined that Ms. Browning has the following severe impairments: diabetes mellitus; peripheral neuropathy; a respiratory impairment variously diagnosed as hypoxemia of unknown origin, asthma, allergic rhinitis, Sicca Syndrome, and/or mild to moderate restrictive disease; fibromyalgia; obesity; chronic asymptomatic tachycardia; hypertension; GERD; and obstructive sleep apnea. AR 12. At step three, the ALJ found that Ms. Browning's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 12.

The ALJ next determined Ms. Browning's residual functional capacity (RFC):

After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) with additional limitations as follows:

---

[2]The ALJ acknowledged that Ms. Browning met the non-disability requirements for disabled widow's benefits. AR 11.

> occasionally stoop, kneel, and crouch; no exposure to odors, dust, gases, and environments involving poor ventilation.

AR 15. At step four, the ALJ concluded that Ms. Browning is capable of performing her past relevant work as insurance clerk or medical office assistant. AR 21. Although the findings at step four are sufficient to support the ALJ's decision that Ms. Browning is not disabled, the ALJ also identified other jobs existing in significant numbers in the national economy that Ms. Browning could perform, including appointment clerk, receptionist and civil service clerk. AR 23.

### III. Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied. *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (quotation omitted). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004). The court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the [administrative law judge's] findings in order to determine if the substantiality test has been met." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (citations omitted). While the court considers whether the ALJ followed the applicable rules

of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

**IV.     Issues Raised on Appeal**

Ms. Browning contends that the ALJ erred in considering medical evidence dated "before the prescribed period" in denying Ms. Browning's claim. According to Ms. Browning, the prescribed period began in February 2007, the month she turned 50 years old and was first eligible to receive disabled widows benefits. Ms. Browning also challenges the ALJ's RFC determination that she is capable of performing a limited range of sedentary work.

**V.     Analysis**

    **A.     The ALJ's Determination of the Prescribed Period and Evaluation of the Medical Evidence**

To qualify for disabled widow's benefits, a claimant must not only prove she is disabled, but also that she meets the requirements in 20 C.F.R. § 404.335. The claimant must have been married to the insured for at least nine months before the death of the insured. 20 C.F.R. § 404.335(a)(1). Additionally, the claimant must be at least 50 years old with a disability that started not later than seven years after the death of the insured. 20 C.F.R. § 404.335(c)(1). The Social Security Administration Program Operations Manual System (POMS) explains that to qualify for disability benefits, a widow "must be found disabled before the end of a certain period prescribed in the law." *See* Commissioner's Brief [Doc.

#22], Attachment 2 (SSA POMS DI 00115.040, 2002 WL 1878385(A)(1). According to POMS, the "prescribed period" begins with the latest of several dates. In this case, the relevant date for the beginning of the prescribed period is May 2002, the month Ms. Browning's insured spouse died. *Id.* at (A)(1)(a). The "prescribed period" ends with the earliest of two dates: the month before the month in which the widow attains age 60 or the close of the 84th month (7 years) after the prescribed period began. *Id.* at (A)(1)(b). In this case, the prescribed period ended on May 31, 2009, seven years after the death of Ms. Browning's spouse. *See also* AR 86. To receive disabled widow's benefits, a widow must prove she became disabled before the end of the "prescribed period."

Ms. Browning turned 50 years old on February 23, 2007. Plaintiff's Opening Brief [Doc. #21] at 2. Ms. Browning contends that because she was not eligible for disabled widow's benefits until she turned 50 years old, the "prescribed period" did not begin until the date and year of her 50th birthday. According to Ms. Browning, the ALJ erred in considering evidence from the period before February 23, 2007.

Ms. Browning's assertion is incorrect. The ALJ properly determined that Ms. Browning's prescribed period began May 11, 2002, and ended seven years later on May 31, 2009. AR 9. Additionally, the beginning of the prescribed period coincides with the date Ms. Browning identified as the onset date of her alleged disability. Moreover, even if the prescribed period began in February 2007, Ms. Browning has provided no legal authority to support her contention that the ALJ's consideration of medical evidence dated before February 23, 2007, would have been in error. Finally, Ms. Browning, herself, alludes to

medical evidence dated before February 23, 2007, in support of her disability claim. Plaintiff's Opening Brief at 10-12.  The ALJ did not err in calculating the prescribed period or in considering Ms. Browning's complete medical record for the prescribed period.

### B. The ALJ's Residual Functional Capacity Determination

Ms. Browning contends the ALJ erred in determining she is capable of performing a limited range of sedentary work.  Ms. Browning points to no legal errors in support of this claim.  Her challenge to the ALJ's RFC determination is based on her implied contention that the ALJ's decision is not based on substantial evidence.  To determine whether the substantiality test has been met, this Court has carefully examined the entire record to determine whether there is evidence that could undercut or detract from the ALJ's findings. This Court may not, however, reweigh the evidence.  Contrary to Ms. Browning's assertions, substantial evidence supports the ALJ's determination of her RFC.

Ms. Browning contends that "[t]he medical evidence clearly documents Plaintiff's severe shortness of breath, diabetic neuropathy (with neuropathic pain), fibromyalgia with severe pain, significant [tachycardia], obesity and depression." Plaintiff's Opening Brief at 12.

At the administrative hearing, Ms. Browning testified that she was unable to work primarily because of her poor memory and her pain.  AR 35.  Although Ms. Browning contends that her mental impairments would preclude her from engaging in substantial gainful employment, she does not point to any evidence that undermines the ALJ's determination that her mental impairments are not severe.  The record supports Ms.

Browning's testimony that she suffered from depression after the death of her husband. She was referred to a psychiatrist in August 2003. AR 311. At that time, she was diagnosed with major depression. AR 311. In April of 2004, Ms. Browning reported that her concentration was "pretty good." Her psychiatrist noted that her depression was "well controlled." AR 250. A consultative examination performed on April 12, 2007, indicated that her remote memory was intact and her immediate memory was unimpaired. AR 428. In determining that Ms. Browning's mental impairments are not severe, the ALJ actually relied primarily on evidence relating to the period of time after February 23, 2007:

> In July 2007, she was noted to enjoy working on crafts to include sewing, quilting, and stained glass. Notes from September 2007 indicated a "bright affect" with no suicidal ideations. In December 2007, she reported doing well, getting ready for the holidays, and had an exchange student from Thailand with her. On April 24, 2008, the clamant indicated that she was "still working and that she has to travel with her job." In August 2008, her GAF score[3] was 58. It must be noted that a GAF is just one tool used by clinicians to develop the clinical picture. It cannot be used in isolation from the rest of the evidence to make a disability decision.

AR 14 (citations to the record omitted). The ALJ's determination that Ms. Browning's mental impairments are not severe is supported by substantial evidence in the record.

The ALJ thoroughly examined and discussed all the medical evidence in the record before determining that Ms. Browning could perform a limited range of sedentary work. In

---

[3]The GAF is a subjective rating on a scale of 1 to 100 of "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed.2000) at 32. A GAF score of 51-60 indicates that a person will have "moderate difficulty in social or occupational functioning." *Langley v. Barnhart*, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004) (internal quotation marks omitted).

so doing, the ALJ provided a longitudinal view of Ms. Browning's severe medical impairments. With regard to the intensity of Ms. Browning's symptoms, the ALJ considered Ms. Browning's credibility and listed several reasons why he questioned her credibility with regard to the severity of her pain. First, the ALJ noted that Ms. Browning claimed she had been disabled since June 1, 2002, but that the record lacked any evidence of a severe impairment related to that date. AR 16. Second, the ALJ found evidence of Ms. Browning's daily activities to be inconsistent with her testimony. For example, Ms. Browning told a treating source in August 2008, that she was taking care of two foreign exchange students as well as two of her boyfriend's grandsons. AR 16; 791. She reported to another source that she was waiting on a decision regarding her disability which would help her financially. AR 16; 302. The ALJ found that the statement "gives the appearance of the true motivation for her application." AR 16. The ALJ noted her activities included sewing and crafts. AR 16; 302. The ALJ also noted a report that Ms. Browning was "still working and that she has to travel with her job." AR 16; 573. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence in the record, provided the determinations are closely and affirmatively linked to [that] evidence." *Adams ex rel. D.J.W. v. Astrue*, 659 F.3d 1297, 1302 (10th Cir. 2011) (internal quotations and citations omitted).

As noted by the ALJ, Ms. Browning was evaluated in June 2006 by an occupational therapist for difficulty walking. AR 19. According to the evaluation, Ms. Browning had intact sensation, normal strength of the bilateral lower extremities as well as good grip

strength. A podiatrist evaluated Ms. Browning, but he did not recommend a power chair for her. AR 235. In this case, the ALJ's assessment of Ms. Browning's credibility is closely and affirmatively linked to substantial evidence in the record.

The ALJ thoroughly examined the record with regard to the shortness of breath of which Ms. Browning had complained throughout most of the prescribed period. In April 2007, she underwent pulmonary function testing as part of a consultative examination. At that point, her breathing restriction was within listing level range. AR 18; 416, 418. In June 2007, however, her physical examination was unremarkable, and her oxygen saturation was 96% on room air. AR 473. By July 2007, Ms. Browning's pulmonary function was well above listing level. AR 567. Although she was diagnosed with obstructive sleep apnea, her physician opined that Ms. Browning had no "significant pulmonary problems except occasional bronchitis." AR 467-468. In October 2007, a physician noted her obstructive sleep apnea was under treatment, but stated that her pulmonary function testing was "essentially unremarkable." AR 578. In April 2008, Ms. Browning's, chest X-ray and CT scan were "completely normal." AR 578. During a short brisk walk, however, Ms. Browning's oxygen saturation dropped, but returned to normal after the walk. AR 578. She was prescribed oxygen for exercise and sleeping on April 11, 2008. By February 2009, Ms. Browning's shortness of breath had improved and was stable. AR 759. The ALJ's conclusion that Ms. Browning should be limited to sedentary work with no exposure to odors, dust, gases, or environments with poor ventilation, is well-supported by the medical record.

The ALJ thoroughly discussed the peripheral neuropathy and other symptoms caused by Ms. Browning's diabetes. Generally, the record supports a conclusion that when Ms. Browning is compliant with her medication, her blood sugar is well-controlled. In August 2003, she had some symptoms "suggestive of neuropathy." AR 300. At that time, her neuropathic pain was controlled by taking Gabapentin. AR 252. In June, 2006, Ms. Browning was evaluated by an occupational therapist for difficulty walking. According to the evaluation, Ms. Browning had intact sensation, normal strength of the bilateral lower extremities as well as good grip strength. AR 237. In October 2007, she was diagnosed with small fiber type peripheral neuropathic pain. AR 457. In December 2007, Ms. Browning was prescribed morphine to control her pain. AR 527. In April 2008, Ms. Browning reported that she was "still working and that she has to travel with her job." AR 573.

The ALJ further considered the evidence in the record concerning Ms. Browning's hypertension, fibromyalgia and GERD. AR 20-21. His conclusion that these impairments do not affect her ability to perform a restricted range of sedentary work is substantiated by the record.

In sum, the ALJ's RFC determination is well supported by the evidence in the record. Accordingly, it is recommended that the final decision of the Commissioner be affirmed.

## **RECOMMENDATION**

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file specific written objections to this Report and Recommendation.  *See* 28 U.S.C. § 636 and Fed.R.Civ.P. 72.  Any such objections should be filed with the Clerk of the District Court by January  4th , 2012.  The parties are further advised that failure to make timely objection to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation terminates the referral by the District Judge in this matter.

ENTERED this  14th  day of December, 2011.

_____
VALERIE K. COUCH
UNITED STATES MAGISTRATE JUDGE